The King *v.* Agnee, Tin Ah Chin, Cheong Kam Ford and Lauon.

and that penal service beyond this limit of time is not under this statute. ALFRED S. HARTWELL,

*Associate Justice.*

Judgment rendered March 29th, 1869, by consent, as of the last of the January Term.

Mr. W. C. Jones, for plaintiff.

Messrs. F. H. Harris and Kahalewai, for defendant.

*Wood vs. Lauhulu,* a similar case to the above, was concluded by the court to fall under the principles of the above judgment.

W. C. Jones, for plaintiff.

Messrs. A. F. Judd and Keawehunahala, for defendant.

## SUPREME COURT—IN BANCO.

### APRIL TERM—1869.

*Allen, Ch. J., Austin, J.*

THE KING *vs.* AGNEE, TIN AH CHIN, CHEONG KAM FORD AND LAUON.

MOTION IN ARREST, because defendants after a verdict of murder, at a CIRCUIT COURT do not appear by the record to have been asked before sentence if they had anything to say why sentence of death should not be passed upon them, denied.

The COMMON LAW and authorities of ENGLAND and the UNITED STATES, are not conclusive here unless "their principles are incorporated in our system of law and recognized by the adjudications of the Supreme Court."

This is a motion filed by Henry Thompson, Esq., one of

the counsel for the above named defendants, that the execution of the judgment of the Circuit Court, pronounced by the Honorable ALFRED S. HARTWELL, Justice of the Supreme Court, presiding Justice of the said Circuit Court, at Lahaina, Island of Maui, on the 29th day of January, 1869, sentencing the above named defendants to the punishment of death, may be arrested, for the reason that neither the said defendants, nor any of them, nor their counsel, were asked, upon their being arraigned for judgment, if they had anything to say why sentence of death should not be passed upon them, in consequence of which the defendants had no opportunity, and did not address the Court previous to the passing of sentence.

Upon the argument, the record of the Circuit Court was produced by the counsel for the defendants, by which it appears that a verdict of guilty of murder was entered up at $3\frac{1}{2}$ o'clock p. m., of Wednesday, the 27th day of January ; that the Attorney General then gave notice that he would move for judgment on the prisoners at 4 o'clock p. m. of Friday, the 29th of January, and that Mr. Stanley, one of their counsel, gave notice that he would file exceptions ; that the Court sat again on Thursday, the 28th, at 10 o'clock a. m., and no business being presented to it, adjourned to the next day ; that on Friday, the 29th, it opened at 10 o'clock, when Mr. Thompson, of counsel for the prisoners, moved the Court for a new trial. On this motion the Court took testimony, and overruled it. The prisoners' counsel then filed their bill of exceptions, to be allowed or disallowed, as of the last day of term ; that at 4 o'clock p. m. the prisoners, with their counsel, being in Court, the Attorney General moved the full sentence of the law be passed upon the prisoners ; that Tin Ah Chin, Cheong Kam Ford, Agnee and Lauon were placed at the bar and sentenced by the Court, severally, to the punishment of death ; and that the Court adjourned to the following day.

The counsel for the prisoners contend that, before passing sentence, it was the duty of the Court, and by the authorities of England and some of the United States, made indispensably necessary, to ask each of the prisoners whether he had anything to say why the sentence of death should not be pronounced against him, and it is material that it should appear on the record to have been done.

This is a formality which is always observed by the English courts at the passing of sentence, and the same formality has been generally observed by the courts in the United States. In the case of Safford *vs.* The People, 1 Parker's Crim. Reports, 476, the Court say that it must appear by the record that the Court demanded of the defendant what he had to say why judgment should not be pronounced against him. In the case of Grody *vs.* The State, 11 Ga., 253, the Court say that it is proper to ask a party who has been convicted upon a capital charge if he has anything to say why sentence of death should not be pronounced against him ; but in a still later case, the omission of this question was not deemed to be fatal, even when the sentence was death.— Sarah *vs.* The State, 28th Ga., 576.

Every country has its peculiar forms of criminal procedure. In relation to the limited right of prisoners to be defended by counsel according to the ancient law, Chitty says : "It seems to be universally agreed that at common law a prisoner was not entitled to defend by counsel upon the general issue of not guilty on any indictment for treason or felony. This rule may appear somewhat strict and severe, as the Crown has always the benefit of counsel to marshal its evidence and state the case to the jury ; but it is in some degree attempted to be explained by the maxim that the judge is to be counsel for the prisoner ; whose duty it is to see that all the proceedings are regular ; to examine witnesses for the defendant ; to advise him for his benefit ; to hear his defense with patience ; and in general to take care that he is neither irregularly nor

The King *v.* Agnee, Tin Ah Chin, Cheong Kam Ford and Lauon.

unjustly convicted; whereas, when counsel are allowed a prisoner, it is their business to see that he lose no advantage; and it is then the duty of the judge to be equal and indifferent between the King and the prisoner.

"Even upon the general issue, the strictest rule of law against defending by counsel has been considerably modified by modern practice. For at the present day a prisoner is allowed counsel to instruct him what questions to ask, or even to ask questions for him, with respect to matters of fact, and to cross-examine the witnesses for the Crown, and to examine those produced on the part of the defendant, though not to address the jury."

Bishop, in his Criminal Procedure, Section 1011, says: "These rules of the common law have, in England, been modified by subsequent legislation and judicial decision, until, at the present time, there is believed to be no case in which the laws of our mother country compel prisoners to defend themselves, and deny them the assistance of counsel. In our entire country, it would probably be difficult to find any trace of such barbarism on the pages where our jurisprudence is written."

It will be seen by the foregoing, that by the common law, a prisoner was not entitled to defend by counsel, but it was made the duty of the judge, at the time when the cases which are relied on as authorities were tried, to examine witnesses for the defendant, and in fact to act as his counsel, and to see that all the proceedings were regular.

There were peculiar reasons in England that should make the Court pause in passing sentence, and make it a very deliberate matter. On this occasion a pardon might be pleaded in arrest of judgment, and it would have the same advantage if plead at that time as when pleaded upon arraignment, namely, the saving the attainder, which can only be restored by Act of Parliament, when a pardon is not pleaded before sentence. Praying the benefit of clergy may

The King *v.* Agnee, Tin Ah Chin, Cheong Kam Ford and Lauon.

also be ranked among the motions in arrest of judgment, but before sentence.

It will be seen, therefore, that in the English practice there were good reasons why this especial notice should be given the prisoner, and that he should be asked why sentence of death should not be pronounced against him.

But it may be asked why this practice should obtain in New York. This State, when a Colony, adopted the English practice in her courts, and continued it to a late period, with all its expensive complications, and it required great effort to so modify it as to make it conform to the general simplicity of her laws. Courts and lawyers are tenacious of forms, precedents and authorities, and sometimes adhere to them when the reason for them has passed away.

By our practice, the Court have authority to assign counsel for the defense of prisoners, (as was done in this case), if prisoners have not personally retained counsel, who examine the witnesses, and make such arguments on the law and the evidence as they may deem proper. They have the most ample opportunity for defense, and every privilege which humane laws can secure, at every stage of the proceedings.

It appears by the record of the Circuit Court that the verdict of guilty was received and entered up, at 3½ o'clock p. m., Wednesday, the 27th of January, whereupon the Attorney General gave notice to the Court, and to the counsel and prisoners—all present in Court—that he should move the Court to pass the full sentence of the law upon the prisoners, on Friday afternoon, at 4 o'clock, the 29th of January, when the forty-eight hours after verdict, required by our statute, should have elapsed ; that their counsel then gave notice that they should file a bill of exceptions, which in the meantime they did prepare and file, and also made a motion for a new trial, which the Court heard, argued and overruled.

At the time the sentence was pronounced, it appears by

the record the counsel were present with the prisoners, and that the hour of which notice had been given having arrived, the Attorney General made the formal motion that the full sentence of the law be passed on the prisoners. Whether the Judge presiding propounds the formal question or not, it is the uniform usage at this stage of the proceedings, to hear any remarks by the prisoners or their counsel, as it is upon all motions made.

This Court would be very likely to vacate a judgment if a presiding Judge of a Circuit Court had refused to hear a prisoner, or his counsel, before sentence, on this motion. The counsel do not state in their motion, nor in argument, the reasons they would have assigned, had the question been put formally by the Court, but they do say that in their view they had no right to interfere at that stage of the proceedings, unless the Court gave opportunity. The Court do uniformly give opportunity to one party to reply to a motion made by the other. The counsel say that they do not claim that the question should be put in formal terms, but should be substantially asked. In this case it was made known by the motion of the Attorney General that the Court would be asked to pass sentence. This was at least an informal way of asking the prisoners' counsel whether they had any objection to the sentence being passed upon them.

It is not pretended that any law of this Kingdom requires the formal question to be propounded, but it is claimed as a common law right by the authorities cited. It does not appear that any statute duty was omitted, or that any right was lost. It is not pretended that they had a pardon to present, or that attainder would follow under our law if the pardon was not presented before sentence, or that they lost the benefit of clergy, as was the case in England, as appears by the authorities cited.

It will be seen that the rights of prisoners, in England, at the time of the cases to which reference has been made,

were not in any degree so well guarded as by our laws and rules of practice, and the Attorney General might with some degree of propriety insist that the barbarous usages in the trial of persons accused of crime, sustained by these authorities, should be renewed, if the Court should sustain the position taken by counsel for the prisoners. The question is simply this, were the proceedings after verdict in conformity to our laws? The record shows fully that they were. We do not recognize as conclusive the common law nor the authorities of the courts of England or of the United States, any farther than the principles which they support may have become incorporated in our system of laws, and recognised by the adjudication of the Supreme Court. Counsel often cite authorities from foreign countries, and virtually claim, as in this case, that they have the authority of law here. We have great respect for the reasoning of many of these authorities but often they are totally inapplicable to our customs and usages, and in conflict with our mode of procedure, both in civil and criminal cases.

There are often peculiar reasons why certain modes of procedure, which obtain in one country may not obtain in another, and which very often are continued when the reason has ceased. Take for instance the mode of empanneling a jury, it will not be considered conclusive upon this Court to recognize the mode of Masschusetts, New York, or England, when in some particular way they differ from our own, and even from each other.

This court claims that it is their duty to conform to the laws of the Kingdom and in the absence of special enactments to make such adjudications as are in accordance with the principles of an enlightened jurisprudence, without special regard whether they conform to English, Massachusetts, or New York authorities, for having these authorities we ought to derive aid from each of them.

There is no country where the rights of the accused are

The King *v.* Agnee, Tin Ah Chin, Cheong Kam Ford and Lauon.

more carefully guarded than here. Able counsel are always assigned—if he is unable or neglects to employ counsel himself. Witnesses are summoned by the Government at his request and every aid is offered him for defence, and this case is a full illustration of the liberality and protection of our laws in his behalf.

We regard the practice of putting the formal question to the prisoner before sentence, as proper, but when the prisoners and their counsel are present in Court, as in this case, we cannot regard the omission as fatal.

The law made it the duty of the Court to pass the sentence and that sentence was by the law made death. The Court could not give consideration, after verdict of guilty, to any appeal for mitigation of the sentence, for the law gives no discretion to the Court, and as the counsel made no motion in arrest of judgment, although present in Court, we regard the course of the presiding Judge as free from error.

The Court take this occasion to express their high appreciation of the services of the counsel who were assigned to defend the prisoners. They have discharged that duty with great fidelity and ability, and the Court most fully concur with the view taken by their counsel, that it was their duty to assert and protect the legal rights of the prisoners in every stage of the proceedings against them. Indeed had they neglected to do this they would have merited the animadversion of the Court, as they certainly must have felt the reproaches of conscience. Motion denied.

The Attorney General for the Crown.

Messrs. Stanley and Thompson for the prisoners.

NOTE.—Mr. Wolf was the first assigned counsel for the prisoners, and very ably conducted the defense until ill health compelled him to retire.

Honolulu, April 7th, 1869.